The United States Court of Appeals for the Federal Trustee is now open for discussion. Please be seated. We have three oral arguments today and one submitted matter. First oral argument, Mr. Finney? Yes, Your Honor. Are you ready to proceed? Yes, Your Honor. Please come forward. Thank you, Your Honors, and may it please the Court. In this case, there was a material alteration in the relationship of the parties, and this is all that was necessary for Mr. Garsaw to become a prevailing party. The Veterans Court misinterpreted the legal test of prevailing party status as seen at Joint Appendix 7, where it looked at matters which occurred after the joint motion was entered into, in this case, to find that Mr. Garsaw was not a prevailing party. It did this even though in Halpern, this Court stated that in order to determine prevailing party status, one looks at a snapshot of what the relationship of the parties was as a result of the joint motion and whether that represented a material alteration in their relationship. Can I ask this? Why would it be wrong to say the following, that in this circumstance, the May 9, 2012, vacator order added nothing material to the potential for your ultimately recovering benefits, and therefore you weren't prevailing on that? And it didn't add anything material because you and everyone else knew that it was restoring a situation in which an error in your favor was about to be corrected anyway. Well, the joint motion for vacator, what it did was it vacated the 2012 decision, which had vacated the 2011 decision, which had originally awarded service connection for the peripheral neuropathy. But each of them requires you to prevail on something other than procedural matter, right? That's correct, Your Honor. But what I'm saying is that when the joint motion was granted, what that in effect did was reinstate the award of service connection for the peripheral neuropathy. But that's a procedural matter. It's not a procedural matter, Your Honor. Without entering into the joint motion, Mr. Garza would not have service connection for peripheral neuropathy. Before entering into that motion, he no longer had the award. That's a technical argument at best. It's not a technical argument, Your Honor. Before the parties entered into that motion, Mr. Garza had been stripped of the award of service connection for the peripheral neuropathy. Is it more than minimal relief which is granted? Yes, it was grants of the award which Mr. Garza was seeking. He was seeking service connection for the peripheral neuropathy. So once the joint motion was granted, eliminating the 2012 board decision, this meant that it left the 2011 decision as if it had never been touched, thus restoring the award of service connection. So it's not just a procedural matter. It was success on the merits. This is the benefit which Mr. Garza was seeking. He was seeking service connection for the peripheral neuropathy which was put back in place as a result of the joint motion. When the board got the case back, was it at all a surprise to you that they basically issued a new opinion that followed its January 2012 opinion? That's pretty much what you were expecting the board was going to do, right? I don't know if it's what we were expecting the board was going to do, but certainly you weren't surprised by it. We were not surprised by it, no. I can't say we were, no. But again, in Halpern, this court said that in order to determine prevailing party status, you look at what the relationship of the parties was at the time the joint motion was granted. So yes, the board did ultimately issue another decision in which it again removed the award, but it did that under 38 CFR 20.904, which it has the power to do in any case to correct the record. The board's original grant of relief was based on a misunderstanding of the record, right? There was some kind of mixing of different claims in the record? There were documents in the record which did not belong to Mr. Garza, yes, that the board based its original decision upon. And so the board was trying to correct that mistake, right? Yes. But again, the key thing here is that once the parties entered into the joint motion, that restored the award of service connection. And in Halpern, this court said that you don't look at what happens after that in order to determine prevailing party status. You simply look at what the relationship of the parties was at the time the joint motion was granted. Because the joint motion had the effect of restoring the award of service connection, the benefit which Mr. Garza was seeking, this made him a prevailing party. Therefore, we respectfully request this court hold that Mr. Garza is a prevailing party. And if there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you, counsel. Thank you. Ms. Tanton? Good morning, Your Honor. May it please the court. The Veterans Court correctly held that Mr. Garza was not a prevailing party as required for an award under the Equal Access to Justice Act. Mr. Garza is seeking fees based on his counsel's erroneous jurisdictional argument before the Veterans Court and the Veterans Court's erroneous decision accepting that argument. The board did possess jurisdiction to issue the peripheral neuropathy portion of its 2012 decision. And the Veterans Court did not have jurisdiction to vacate this portion of that decision. You have two separate grounds, right? Is that a fair way to put it? I guess one would be, assuming we were to regard this as any kind of victory for Mr. Garza, it was a very limited temporary procedural one, right? And then you have this other argument that I'm having some trouble following, which is when an aggrieved veteran filed an appeal from a board decision, the Court of Appeals for Veterans Claims, the jurisdiction over this case doesn't really go all the way completely to the Veterans Court. Only those portions of the board's opinion that denied certain claims are within the jurisdiction of the Veterans Court. And then any other portion of the board's opinion for other claims where the board elected to either remand it back to the RO or to grant relief, those are not within the Veterans Court's jurisdiction. And the board is free to concurrently do whatever it wants to do to those sections of the board opinion, while the other parts of the board opinion are on appeal to the Veterans Court. Is that the argument? That's correct. And where is the authority for that? Well, the Veterans Court discussed the authority in its decision. And also, for example, at Joint Conduct 3, they cite Hibbard v. West, which is a Veterans Court decision, 13.546, that states that the jurisdiction of the Veterans Court is limited to the board decisions that are adverse to the claimant. Again, there's 38 U.S.C. section 7261a.4, which states that the Veterans Court's review is restricted to findings of material fact adverse to the claimant. The same thing is found in 38 U.S.C. 7266a. This shows that the Veterans Court can set aside decisions in excess of the statutory authority of the board, but only those that are adverse to the claimant. The Veterans Court also discussed this in Tyruis v. Shinseki, which is 23 Vedap 166. And we did as well, I think, in affirming Tyruis, that said that if there's a board remand issue, that does not constitute a final decision appealable to the Veterans Court, and neither, of course, does one in which the claimant succeeds. It's just ones where the board says, finally, over and done with, you lose. Correct, Your Honor. Basically, what we see here is Mr. Garsow is claiming that the Veterans Court acting beyond its jurisdiction has made him a prevailing party, even though the Veterans Court itself realized later that its order granting the joint motion to vacate was in error. However, it felt that it was not necessary. The thing that I guess I'm having trouble understanding is not the series of points about who had jurisdiction over what when, but what any of that has to do with the question of prevailing party status. In the absence of saying simply, in these circumstances, everyone knew at the time of the decision that this added nothing to the potential for ultimate relief on the merits. Yes, Your Honor. It added nothing to the potential for further relief. So then why do we have to go further in our analysis? Well, Your Honor, I think we've pointed this out in part to explain what was the next step. It kind of shows, based on what the board did do in its 2013 decision, it indicates what the status was at the time of the vacater, that the board could, as it did, simply go back and retake the same steps, retake the same actions related to. So at most, really what you're saying is that's a footnote to an analysis which says this was purely procedural. Well, Your Honor, I think more than that, it provides context and it explains why this isn't the type of behavior that the court should reward. We see both a joint motion to vacate the entire board decision and filed the exact same day, March 5, 2012, a joint motion for partial remand that states that the peripheral neuropathy claim is not before the Veterans Court and the decision should not be altered. On the same day, Mr. Garzao is acknowledging that the portion of the decision that he wants vacated is not actually before the Veterans Court at all. So we believe this is a fact that is important in the prevailing party analysis. In the end, it demonstrates that Mr. Garzao was aware that the neuropathy claim was not on appeal, that the joint motion for partial remand dealt only with the remand of the hearing loss claim, noting that the neuropathy claim, quote, was not currently before the court. And we noted that the board, because it retained jurisdiction over the peripheral neuropathy claim, had the authority to correct obvious error, and that's in 38 U.S.C. 7103C. I think maybe I was not appreciating this from your brief. Do I understand you to be saying that in fact the May 9th, May 9th or March 9th, the March motion, May 9th order, right? It's the March 5th, 2012 motion. Motion on the May 9th, 2012 order of the Veterans Court, that that actually did not vacate the January board neuropathy decision because the CAVC did not have jurisdiction to do that? Well, the CAVC understood itself to be vacating the entire January 23rd, 2012 board decision. Let me just try to ask this. Did the CAVC vacate the entire January board decision? Yes, it did. Okay. So to that extent, without thinking about anything else, something favorable happened for Mr. Garsow? No, Your Honor. The January, no, because it only put the parties back to the same position that they'd been in, and in that January 23rd, 2012 board decision, the board acknowledged that there was evidence in the record that indicated that Mr. Garsow could have a peripheral neuropathy claim, and it instructed the RO to go back and look at the evidence again and to consider the fact that there was in the record a note that neuropathy was indicated. So our argument is that in the end, this 2012 decision was basically recreated in February 2013. All that Mr. Garsow achieved was a delay of a year in getting the same decision from the board. As the board tried to correct its error as it's entitled to do, it's not really an effort to achieve justice when all that you're achieving is a delay, and we don't believe that Congress intended that type of activity to be the basis of the fee award. Well, what you're really saying is a delay of action to your own benefit. That is what happened here, and it was not in any way a decision by the board that was adverse to Mr. Garsow. It was simply an effort to correct an error, to have the correct veterans evidence considered. Mr. Garsow, by trying to block reconsideration of the correct evidence, was trying to maintain an award of service connection based on the wrong person's medical record. In fact, when appealing again the February 28, 2013 decision, again Mr. Garsow tried to block the correct veterans records from being included. How did that other person's medical records get into this particular file? Your Honor, we're not aware of how that occurred, but certainly there are a lot of records simply just in the different files that could have become intermingled. But you can see, comparing the November 2011 board decision with the— You're not saying that stuff happens a lot, are you? No, Your Honor. We don't know what occurred, but if you compare the November 2011 board decision with the January 2012 decision, you can see that certain pieces of evidence aren't mentioned in the 2012 decision, which indicates that those were likely the ones that were from the wrong veteran and removed. And we would point out also that what Mr. Garsow could have done here is simply moved for partial vacater of the decision of the board. Only the portion related to hearing loss would have been void. That's what the Veterans Court found. It said that it was void to the extent that the hearing loss decision was addressed because there had been a notice of appeal filed. The Veterans Court didn't address this, but likely the board simply was not aware that an appeal had been filed at the time that it issued its January 2012 decision. And Mr. Garsow has said that this vacater reinstated his award of benefits. However, again, we note that this is a purely procedural order on a jurisdictional issue. It left the parties and the board to address the merits in due course, which they did in the February 28, 2013 board decision. The order contained no holding preventing the board from reenacting the exact same merits determinations that it had made in this 2012 decision, and that's exactly what it did. Mr. Garsow has argued today that he would have had no grant service connection if it had not been for that vacater. But, in fact, now he has received service connection after the correct veterans records have been considered, and the 2012 decision indicated that the RO was to consider the evidence again and consider the fact that neuropathy had been indicated in certain of the records. And we note that Mr. Garsow today agreed that vacater under 38 CFR 20.904 is something that the board is entitled to do. And, again, the Veterans Court correctly found that its order summarily and without qualification granted the motion, that's at Joint Appendix 3, it did not address the merits. It merely presented an agreement that the parties believed the 2012 decision was ultra viris and should be vacated. And that does not have sufficient judicial imprimatur to materially change the parties' legal relationship. This is an interlocutory ruling that provides an opportunity for future adjudication. And for those reasons, we believe the court should affirm the Veterans Court decision not to grant EJF fees. And if the court has no further questions, thank you. Thank you. Mr. Finney? Thank you, Your Honor. There's a few points that the Secretary brought up that I felt the need to address. First, the Secretary devoted a large portion of his brief to saying why the parties should not have entered into the joint motion. And it was erroneous for the Veterans Court to grant that motion. However, the Secretary didn't enter that motion under duress or anything of that sort and knew the full consequences of the motion. So the Secretary cannot now complain that it was erroneous for the parties to enter into that motion. Another point there is the Secretary just spoke about things that appellants could have done, but again, it's a joint motion. It wasn't something that appellants filed unilaterally. Again, we are not in the same position as the Secretary believes that we were before the joint motion was granted. Because before the joint motion was entered into, Mr. Garza no longer had service connection for his peripheral neuropathy. By the Veterans Court granting the parties joint motion and setting aside the 2012 board decision, this put the award of service connection for the peripheral neuropathy back into effect. And it is true that Mr. Garza now once again has service connection after the 2013 board decision. But at the time of the 2012 board decision, he had to file an appeal to that decision because he didn't know what would happen down the road more than two years later. And by entering into that joint motion, it restored the award of service connection for the peripheral neuropathy. It was not just a delay in the board's ability to correct itself. At the time of the joint motion, he once again had service connection for the peripheral neuropathy, which is all that is necessary for him to be a prevailing party. If there are no further questions. Thank you, Your Honors. Thank you.